UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

MITCHELL BENNETT DUNN
and ESTHER MAE GIBSON,

      Plaintiffs,

v.                          Civil Action No. 2:14-25532

NICHOLAS COUNTY, WV, COUNTY COMMISSION,
d/b/a NICHOLAS COUNTY SHERIFF'S DEPARTMENT,
DEPUTY JOHN DOE #1, individually
and in his official capacity,
DEPUTY JOHN DOE #2, individually
and in his official capacity,
CITY OF SUMMERSVILLE, WV,
d/b/a SUMMERSVILLE POLICE DEPARTMENT,
and OFFICER B.J. DODRILL, individually
and in his official capacity,

      Defendants.

## MEMORANDUM OPINION & ORDER

      Pending is the motion for summary judgment filed jointly by defendants Officer B.J. Dodrill and the City of Summersville, West Virginia, on August 20, 2015.

### I. Background

#### A. Factual background

      Mitchell Dunn and Esther Gibson ("Dunn" and "Gibson," respectively; collectively, "plaintiffs"), are residents of Nicholas County, West Virginia.  The defendants are the City of Summersville (the "City"), Officer B.J. Dodrill of the

Summersville Police Department, the Nicholas County Commission (doing business as the Nicholas County Sheriff's Department), and two unidentified Nicholas County sheriff's deputies.

This civil action arises from an incident that occurred on September 7, 2012. The material facts are undisputed.

That evening, plaintiffs arrived home from a long car trip. They were surprised to find Dunn's brother Jody selling plaintiffs' belongings at a yard sale in front of their home. Plaintiffs confronted Jody, and a "heated discussion" ensued. Eventually, Dunn told Jody that he could stay the night but had to move out of the house in the morning. This ultimatum upset Jody, who told Dunn to "call the police and have [him] throw[n] out if that's what [Dunn] wanted." After arguing with Jody for a while longer, Dunn and Gibson went inside to get ready for bed, whereas Jody "ran off" down the street.

Jody flagged down a patrolling police cruiser driven by Officer Aaron Evans of the Summersville Police Department ("SPD"). Jody told Officer Evans that Dunn was drunk, had threatened him with a pistol, and was a convicted felon. Based on this information, relayed to him by Officer Evans, Officer Dodrill prepared an affidavit and application for a search warrant.

2

In the early hours of September 8, Dodrill and at least one other SPD officer "tr[ied] several time[s] to get Mitchell Dunn to come to the door," but "he would [not] comply." Believing that Dunn had "barricaded himself inside along with his girlfriend," Dodrill requested assistance from the Nicholas County Sheriff's Department's Special Emergency Response Team ("SERT").

SPD personnel, including Dodrill, briefed the assembled SERT team outside the Dunn residence.  At around 5 o'clock in the morning, SERT entered the home by force.  The officers who stormed the house were clad "in all black," wearing "black face shields" over their faces and carrying "AR-15[] or M-16[]" rifles.  They broke down the front door with a sledgehammer, then threw at least one flashbang grenade into plaintiffs' bedroom.

The masked officers proceeded to "bash[]" Dunn before forcing him to the ground and handcuffing him.  They "dr[agged] Gibson off the bed" and handcuffed her, too.  Before removing Gibson from the bedroom, the masked officers pulled her shirt up to her neck and pulled her pajama pants down to her knees, exposing her naked body.  Eventually, Gibson's clothes were somehow "situated," and she was taken from the bedroom in handcuffs.

Gibson was escorted outside, where she waited on the sidewalk with Dodrill and a deputy sheriff.  Dunn, however, was taken in handcuffs to the kitchen.  Dunn claims that he was then surrounded by four masked officers and beaten severely.

Dunn and Gibson were taken into custody at the scene. Dunn was charged with being a felon in possession of a firearm, with "brandishing," and with "obstruction."  Gibson was charged with obstruction.  Dunn pleaded guilty to the obstruction charge in December of 2012; the other charges were dismissed.  He was sentenced to one year of unsupervised probation and ordered to pay a one hundred dollar fine.  The obstruction charge against Gibson was dismissed.

## B. Procedural background

Plaintiffs initiated this action by filing a seven count complaint on September 8, 2014.  Count 1 charges the individual defendants -- Dodrill and two unidentified sheriff's deputies -- with violating various provisions of the West Virginia constitution.[1]  Count 2 charges the governmental

---

[1]   Count 1, a "constitutional tort" claim based on alleged violations of West Virginia constitutional prohibitions on unreasonable searches and seizures, is not mentioned by the parties in any briefing after the complaint.  Perhaps this is because the protections in the Fourth Amendment to the United States Constitution are available to, and equally protective of, plaintiffs under these circumstances.  In any event, because there is no dispute of material fact, and because Dodrill and the City

4

defendants -- the Nicholas County Commission and the City --
with vicarious liability for the acts of the individual
defendants, and further alleges that the individual defendants'
conduct was in accordance with official policies of the
governmental defendants.  Count 3 charges the governmental
defendants with common law negligent supervision.  Count 4
simply seeks punitive damages.[2]  Count 5 charges the individual
defendants with battery, and Count 6 charges them with
intentional infliction of emotional distress.  The "federal law
claim" (hereinafter, "Count 7," a section 1983 claim) charges
all five defendants with violating plaintiffs' constitutional
rights as protected by the Fourth and Fourteenth Amendments to
the United States Constitution.

On August 20, 2015, the City and Dodrill moved for
summary judgment on all counts.  Their chief contention is that
the undisputed evidence demonstrates that Dodrill did not use or
unreasonably fail to prevent the alleged unlawful force used in

---

are both entitled to judgment as a matter of law as to every count
in the complaint, as discussed more fully below, the court will
treat Counts 1 and 7 together.

[2]  Count 4 is not an independent cause of action but, rather, an
assertion that plaintiffs are entitled to punitive damages should
they prevail.  Because Dodrill and the City are entitled to
judgment as a matter of law on all claims, plaintiffs' claim to
punitive damages as to them is denied as moot.

the plaintiffs' arrests.  Hence, they assert that Dodrill is entitled to judgment as a matter of law, regardless of immunity, on all counts.  In the alternative, they assert common law qualified immunity and state-law statutory immunity.

The court is properly invested with jurisdiction over the section 1983 claim inasmuch as section 1983 is a federal statute through which deprivation of a constitutional right may be redressed.  See 28 U.S.C. § 1331.  A district court properly invested with jurisdiction over one claim in an action can exercise supplemental jurisdiction over additional state law claims that "form part of the same case or controversy."  28 U.S.C. § 1367; see also UMWA v. Gibbs, 383 U.S. 715 (1966).  Accordingly, the court has jurisdiction over all of plaintiffs' claims.

## II. Summary judgment standard

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); The News & Observer Publishing Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010).

6

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  <u>Id.</u>  The moving party has the initial burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of material fact for trial.  <u>See</u> Fed. R. Civ. P. 56(c); <u>Celotex</u>, 477 U.S. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991).  Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  <u>Anderson</u>, 477 U.S. at 248.

### III. Discussion

### A.

Officer Dodrill and the City first assert that they are entitled to judgment as a matter of law because the undisputed facts show that Dodrill did not participate in the alleged unlawful conduct.  Accordingly, they conclude that no reasonable jury could find Dodrill or the City liable for violating plaintiffs' constitutional rights to the extent set forth in Counts 1, 2, 3, and 7, or for committing the torts alleged in Counts 5 (battery)[3] and 6 (intentional infliction of emotional distress).[4]

As noted above, the material facts surrounding the forced entry into the Dunn residence are undisputed.

Plaintiffs first realized that "somebody was coming into the[ir] home" when they heard a "bang" in the middle of the

---

[3]  Under West Virginia law, "[i]n order to be liable for a battery, an actor must act with the intention of causing a harmful or offensive contact with a person."  Syl. Pt. 8, W. Va. Fire & Cas. Co. v. Stanley, 216 W. Va. 40 (2004).

[4]  Liability for intentional infliction of emotional distress requires the plaintiff to show that the defendant's intentional or reckless conduct was so extreme and outrageous as to exceed the bounds of decency, that the conduct caused the plaintiff emotional distress, and that the distress suffered was so severe that no reasonable person could endure it.  See Travis v. Alcon Labs., Inc., 202 W. Va. 369, 375 (1998).

night.  Dunn Dep. 66:18-67:1.  Dunn "raised up in bed" to look
around, and moments later, "the window [was] blow[n] out [and]
the bedroom door got kicked in."  Dunn Dep. 67:1-3.  "The next
thing [Dunn] knew," there were "five or six people on [him],
handcuffing [him] and beating the s--t out of [him]."  Dunn Dep.
67:7-9.

       At the same time, masked officers "grabbed [Gibson]
and flipped [her] over and had their knee in her back."  Gibson
Dep. 45:5-7.  She was dragged off the bed, and someone "pull[ed]
her clothes off."  Gibson Dep. 46:5-7, 47:1-49:1; see also Dunn
Dep. 158:5-159:22 ("Their hands [were] down her pant and her
pants [were] halfway down[.]").  Because Gibson was wearing only
a t-shirt and pajama shorts, with nothing underneath, she was
left "pretty much naked."  Gibson Dep. 48:5-19.  After subduing
Dunn, and somehow "situating" Gibson's clothing so that she was
no longer exposed, Gibson Dep. 49:3-22, the masked officers
brought plaintiffs out of the bedroom.  Dunn Dep. 72:19-74:2.

       Gibson was taken outside, Gibson Dep. 50:4-15, while
Dunn was taken to the kitchen and beaten by four masked
officers.  Dunn Dep. 73:22-74:2, 155:8-156:1; Gibson Dep. 50:16-
17.  "Chief Nowak and also a couple more city police officers,"
including Dodrill, were outside with Gibson.  Dunn Dep. 74:4-13;
Gibson Dep. 76:18-77:5.  The city officers were wearing "city

uniforms," whereas the officers who entered the bedroom were wearing black uniforms with black masks.  Dunn Dep. 75:8-9, 75:15-20, 156:2-8.

Dodrill claims that "[n]o officers from the SPD accompanied SERT when it made entry into the home to subdue and restrain" the plaintiffs.  Dodrill Aff. ¶ 11; see also Nowak Aff. ¶ 13 ("No officers from the SPD had any involvement in the entry into the [Dunn residence] or in the efforts to subdue and restrain Mitchell Dunn and Esther Mae Gibson.").  Dodrill further states that he was not wearing a black "SWAT" uniform or face mask on the night in question, and that he did not enter the Dunn residence until plaintiffs had been subdued and removed from the home.  Dodrill Aff. ¶¶ 4-6.  These statements have not been disputed by plaintiffs; indeed, plaintiffs' testimony corroborates Dodrill's.  There is thus no genuine dispute that neither Dodrill nor any other City police officer participated in either disrobing Gibson in the bedroom or in beating Dunn.

Because the undisputed facts indicate that Dodrill was not present in the Dunn residence during the alleged unlawful conduct, no reasonable jury could find him liable for the torts alleged in Counts 5 and 6.[5]  Nor could any reasonable jury find

---

[5]  Plaintiffs have not alleged that any of Dodrill's conduct before SERT entered the residence was unlawful, or that he was engaged in any conspiracy with any other person.

10

that he participated directly in any violation of plaintiffs'
constitutional rights.  To the extent that plaintiffs'
constitutional claims are grounded on Dodrill's participation in
the alleged unlawful conduct, he is entitled to judgment as a
matter of law on those claims as well.

B.

In their response to the pending motion, plaintiffs
offer a new basis for holding Dodrill liable under section 1983.
They contend that even if Dodrill did not participate directly
in the alleged unlawful conduct, he was under an affirmative
duty to prevent it.  Because the defendants have filed a
comprehensive reply, the court will consider plaintiffs' new
theory of liability, even at this late stage.

Section 1983 provides a cause of action to individuals
whose constitutional or federal statutory rights have been
violated by a person acting under the purported authority of one
of the sovereign states.  42 U.S.C. § 1983 ("Every person who
. . . causes . . . [a] deprivation of any rights . . . secured
by the Constitution and laws, shall be liable to the party
injured"); see also Hafer v. Melo, 502 U.S. 21, 27 (1991)
("Through § 1983, Congress sought 'to give a remedy to parties
deprived of constitutional rights, privileges and immunities by

11

a [state] official's abuse of his position.'") (quoting <u>Monroe</u> <u>v. Pape</u>, 365 U.S. 167, 172 (1961)).

The threshold question is whether a constitutional violation occurred in the first place.  <u>See</u> <u>Willis v. Oakes</u>, 493 F. Supp. 2d 776, 784 (W.D. Va. 2007).  If so, a bystander police officer may be held liable under section 1983 for a violation of a person's constitutional rights committed by a fellow officer if the bystander "(1) knows that a fellow officer is violating an individual's constitutional rights[,] (2) has a reasonable opportunity to prevent the harm[,] and (3) chooses not to act." <u>Randall v. Prince George's Cty.</u>, 302 F.3d 188, 204 (4th Cir. 2002).

As a rule, section 1983 claims in which it is alleged that law enforcement officers used excessive force in the course of an arrest are analyzed under the "objective reasonableness" standard of the Fourth Amendment.  <u>Graham v. Connor</u>, 490 U.S. 386, 388-89 (1989).  Typically, "no force" is necessary to restrain and take into state custody a suspect who is not endangering officers or otherwise resisting arrest.  <u>Bennett v.</u> <u>Krakowski</u>, 671 F.3d 553 (6th Cir. 2011); <u>see</u> <u>also</u> <u>Rambo v.</u> <u>Daley</u>, 68 F.3d 203 (7th Cir. 1995) ("The Constitution clearly does not allow police officers to force a handcuffed, passive suspect into a squad car by breaking his ribs[.]").

It is thus well-established that the police violate the Fourth Amendment prohibition on unreasonable seizures when they beat a suspect who has been handcuffed and subdued. See Kane v. Hargis, 987 F.2d 1005 (4th Cir. 1993) (no immunity where police reacted to handcuffed plaintiff's attempt to resist arrest by "repeatedly push[ing] [her] face into the pavement, cracking three of her teeth, cutting her nose, and bruising her face"); Goff v. Bise, 173 F.3d 1068 (8th Cir. 1999) (same where police handcuffed plaintiff, threw him to the ground, and choked him); Alexis v. McDonald's Restaurants of Mass., Inc., 67 F.3d 341 (1st Cir. 1995) (same where police dragged handcuffed plaintiff along the ground into a police car, bruising her legs).

Likewise, a strip search can be unreasonable, especially if it is sexually intrusive or performed in front of unnecessary onlookers. See Amaechi v. West, 237 F.3d 356 (4th Cir. 2001) (invasive, sexually exploitive strip search performed on busy public street was unreasonable); cf. Hutchinson v. W. Virginia State Police, 731 F. Supp. 2d 521, 531 (S.D. W. Va. 2010) (Chambers, J.) (female suspect who was forcibly removed from the shower during the execution of a search warrant and forced to lie down, naked, for at least 45 minutes in the presence of eleven male law enforcement officers, one of whom

13

slapped her behind, had legally cognizable claim for outrage),

aff'd sub nom. <u>Hutchinson v. Lemmon</u>, 436 F. App'x 210 (4th Cir.

2011).

Here, even if the disrobing of Gibson was

unconstitutional, plaintiffs have offered no evidence to show

that Officer Dodrill was aware of it.  The undisputed evidence

shows that Dodrill did not enter the house until Gibson had been

removed from it.  <u>See</u> Dodrill Aff. ¶¶ 11-13, 17; Nowak Aff. ¶¶

13-14.  Gibson's clothing was arranged before she was taken from

the bedroom, Gibson Dep. 49:7-10, 50:1-5, leaving Dodrill with

no way of then knowing she had been forcibly disrobed.  That

evidence is uncontroverted, and in the absence of evidence to

the contrary, no reasonable jury could find that Dodrill knew

that Gibson's rights were being violated.

A similar result obtains with respect to Dunn.

According to Dunn and Gibson's uncontroverted testimony, Dunn

was handcuffed before being removed from the bedroom.  Dunn Dep.

47:21-22 ("[T]hey're rolling me over, handcuffing me."), 73:17-

18 ("Both of us w[ere] handcuffed before they ever even brought

us up" out of the bedroom.); Gibson Dep. 44:17-45:9.  Dunn was

then taken to the kitchen, where he claims four masked officers,

"two on each side," Dunn Dep. 155:17-18, surrounded and beat

him, causing numerous injuries, Dunn Dep. 76:8-77:13, 94:4-

95:22, 155:17-156:1.  Gibson was able to observe this from outside because "you can see straight through the front door all the way back to [the kitchen]."  Dunn Dep. 157:16-18.  Gibson recalled that she could see the masked officers "beating on him, and he was screaming at the top of his lungs," Gibson Dep. 50:16-21, while "[t]hey were kicking him -- kicking and kneeing him in the side," Gibson Dep. 51-4:8.  When Dunn was finally taken out of the house, he "could barely walk [and] the[ masked officers] were literally just dragging [him]."  Dunn Dep. 77:11-13.  It appears from this uncontroverted testimony that a violation of Dunn's constitutional rights occurred.

The next question is whether Dodrill knew that Dunn's constitutional rights were being violated.  <u>Randall</u>, 392 F.3d at 204.  On this point, plaintiffs have produced no evidence that Dodrill knew constitutional violations were occurring in the kitchen.  Nor have plaintiffs produced any evidence that Dodrill was able to see Dunn being beaten in the kitchen or that he could hear Dunn screaming inside.  Dodrill claims that "[a]t the time Plaintiff Dunn alleges he was physically assaulted by other officers in his bedroom and kitchen, I was located outside of the residence."  Dodrill Aff. 2, ¶ 6.  He "did not observe any officer punch, hit, kick, knee, stomp[], or otherwise physically assault . . . Plaintiff Dunn."  Dodrill Aff. 2, ¶ 7.

The absence of contrary evidence from the plaintiffs is fatal to their bystander liability theory, as plaintiffs cannot rely on the pleadings to create a genuine dispute of material fact.  Fed. R. Civ. P. 56(c)(1).  Nor can they rely on the possibility that a jury might disbelieve Dodrill's testimony.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (plaintiff may not defeat summary judgment merely by asserting that the jury might, and legally could, disbelieve defendant's version of the facts); see also 10A Charles Alan Wright, et al., Federal Practice and Procedure § 2726 (3d. ed. 1998) (specific facts must be produced in order to put credibility in issue so as to preclude summary judgment).  No reasonable jury could find for plaintiffs on these facts, and consequently Dodrill is entitled to judgment as a matter of law on plaintiffs' bystander liability theory.

C.

The only remaining claims in issue are against the City.[6]

Count 3 of plaintiffs' complaint alleges that the City "failed to exercise reasonable care in the hiring, retention, and/or supervision of . . . Dodrill." Compl. ¶ 26.  Count 2 alleges that the City's policies, customs, or procedures encourage constitutional violations.  Compl. ¶ 22.  Count 7, the federal constitutional claim, contains only a general allegation that the City's actions were "objectively unreasonable, unlawful, unwarranted, and in violation of . . . [p]laintiffs' clearly established procedural and substantive rights. . . ." Compl. ¶ 38.

A state's political subdivisions, including municipalities and other local governmental units, are considered "persons" for the purposes of Section 1983.  Monell

---

[6]  Under section 1983, local governments are responsible only for "their own illegal acts."  Pambaur v. Cincinnati, 475 U.S. 469, 479 (1986) (citing Monell v. New York City, 436 U.S. 658, 665-683 (1978)).  They are not vicariously liable for their employees' actions.  See Bd. of Commissioners of Bryan Cty. v. Brown, 520 U.S. 397, 403 (1997).  Therefore, inasmuch as Counts 1 and 7 raise claims against the City for alleged acts of intentionally-applied excessive force, summary judgment is appropriate.

<u>v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978).  A local government only faces liability under Section 1983 when:

> [The] execution of [the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible [for] under § 1983.

<u>Id.</u> at 694.  That is, for Section 1983 liability to extend to a local government, the government's policy or custom must be the "moving force" that resulted in the constitutional violation. <u>Id.</u>, <u>see also</u> <u>Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 404 (1997).

In the context of a section 1983 claim, "[a] policy or custom for which a municipality may be held liable can arise in various ways, including "through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens[,]' or . . . through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'"  <u>Lytle v. Doyle</u>, 326 F.3d 463, 471 (4th Cir. 2003) (internal citations omitted).  Thus, a political subdivision can face section 1983 liability based on its decision to hire an employee who subsequently violates a plaintiff's constitutional rights, <u>see</u> <u>Brown</u>, 520 U.S. 397, 405-415, as well as for failing to supervise its employees properly, <u>see</u> <u>Shaw v. Stroud</u>, 13 F.3d 791 (4th Cir.

1994); Wellington v. Daniels, 717 F.2d 932 (4th Cir. 1983).
This liability is "not premised upon respondeat superior but
upon 'a recognition that supervisory indifference or tacit
authorization of subordinates' misconduct may be a causative
factor in the constitutional injuries they inflict on those
committed to their care.'" Shaw, 13 F.3d at 798 (quoting Slakan
v. Porter, 737 F.2d 368, 376 (4th Cir. 1984)); see also Avery v.
Burke Cty., 660 F.2d 111 (4th Cir. 1981).  Relatedly, the West
Virginia Supreme Court of Appeals explained in McCormick v. West
Virginia Department of Public Safety that as a matter of state
law a claim of negligent retention against a governmental entity
involves the following inquiry:

> [W]hen the employee was hired or retained, did the
> employer conduct a reasonable investigation into the
> employee's background vis a vis the job for which the
> employee was hired and the possible risk of harm or
> injury to co-workers or third parties that could result
> from the conduct of an unfit employee? Should the
> employer have reasonably foreseen the risk caused by
> hiring or retaining an unfit person?

202 W. Va. 189, 193 (1998) (per curiam); see also State ex rel.
W. Va. State Police v. Taylor, 201 W. Va. 554, 560 n. 7 (1997).

Here, plaintiffs have pointed to no evidence, and the
record discloses none, that the City failed to conduct a
reasonable investigation into Dodrill's background, failed to
address reasonably foreseeable risks created by Dodrill, or

19

otherwise was negligent in hiring or retaining him.  Nor can plaintiffs point to any evidence in the record regarding the City's policies, procedures, or practices.  Indeed, the record is devoid of anything, outside of the allegations in the complaint, that would show that the City makes a practice of violating the constitutional rights of its citizens.  In short, plaintiffs have offered no evidence sufficient to create a genuine dispute of material fact as to any of the allegations in Counts 2, 3, or 7.  In the absence of such evidence, no reasonable jury could find in favor of plaintiffs against the City.  Accordingly, the City is entitled to judgment as a matter of law.

## IV. Conclusion

For the foregoing reasons, the court concludes that there is no genuine issue of material fact and that, on the undisputed facts, Officer Dodrill and the City of Summersville are entitled to judgment as a matter of law on all counts. Consequently, it is ORDERED that the pending motion for summary judgment be, and it hereby is, granted.

The Clerk is directed to forward copies of this order to all counsel of record and any unrepresented parties.

DATED: November 10, 2015

John T. Copenhaver, Jr.
United States District Judge